**MOWER COUNTY WELFARE BOARD, Respondent,**

v.

**STATE of Minnesota, DEPARTMENT OF PUBLIC WELFARE, Appellant,**

**Phyllis Leeper, Respondent.**

**No. 46165.**

Supreme Court of Minnesota.

Sept. 23, 1977.

---

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Michael R. Saeger, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Wallace C. Sieh, County Atty., Austin, for Mower Co. Welfare Bd.

Phyllis Leeper, pro se.

PER CURIAM.

This is an appeal from an order of the district court of Mower County reversing an order of the commissioner of public welfare which directed the Mower County Welfare Board to assume the payment of medical expenses for an elective nontherapeutic first-trimester abortion performed on a patient who was an AFDC recipient.

The issue presented is whether or not existing regulations of the Department of Public Welfare of the State of Minnesota compel a county welfare board to fund elective nontherapeutic abortions of welfare patients under Title XIX of the Social Security Act without prior authorization by the county board. That question has been resolved by our decisions in *McKee v. Likins,* Minn., 261 N.W.2d 566 (1977) and *Dakota County Welfare Bd. v. State, Department of Public Welfare,* Minn., 261 N.W.2d 565 (1977), both filed herewith, in which we hold that existing regulations do

1. Those cases do not deal with public funding of "medically necessary" abortions, the pay-

not compel such payment by county boards.[1] Accordingly, we affirm the decision of the district court.

Phyllis Leeper was an unmarried woman receiving AFDC benefits when in February 1973 she found that she was pregnant by a man other than her former husband. At that time she was the mother of 4 children ranging in age from 3 years to 12 years and testified she "wasn't ready to have another baby" and was "having a hard time making a go of it" with the 4 children she already had. She had moved from Mower County to Hennepin County on July 6, 1972 and was admitted to Hennepin County General Hospital on March 16, 1973, where an abortion was performed on her. Hennepin County billed Mower County for the expenses of the medical procedures but Mower County refused to assume liability on the grounds, among others, that:

"* * * Public welfare funds may not be expended for abortions. Pregnancy is neither a sickness or a disease. While it may be an inconvenience, there is no necessity or justification for welfare funds to be expended for eliminating an inconvenience * * *"

Mrs. Leeper thereupon appealed to the commissioner of public welfare. The commissioner held that under Minn.St. 393.07, subd. 2, county welfare boards are required to follow the regulations of the commissioner in administering public assistance programs. Under the department's Rule 47, promulgated pursuant to Minn.St. 256B.04, subd. 2, and other regulations of the department as well as Minn.St. 256B.02, subd. 8, the commissioner held that medical assistance for medical care included in-patient hospital services and physician's services which under commissioner's Policy Bulletin # 12 mandated the reimbursement for abortions performed by licensed physicians in accordance with the provisions of Title XIX of the Social Security Act. The commissioner concluded with the following statement:

ment for which has not been challenged in our court.

"The State Agency has always required that the Medical Assistance program as administered within the State is to be of the same quality of service and breadth of scope as could reasonably be expected for a non-assistance person.

"4. Minnesota Statutes, Section 256B.0[2], Subdivision 8 provides:

' "Medical Assistance" or "medical care" means payment of part or all of the cost of the following care and services for eligible individuals whose income and resources are insufficient to meet all of such cost:

1. Inpatient hospital services . .

3. Physician's services . . . ,'

"Commissioner's Policy Bulletin, # 12 provides, in part:

'. . . (T)ermination (of pregnancy), when performed by licensed providers shall be reimbursed pursuant to the Medical Assistance Program as provided for by Title XIX of the Social Security Act and Minnesota Statutes, Chapter 256B . . .'

"Since, by the Court's decision, voluntary termination of pregnancy is a matter for a woman and her physician, it is clearly within the scope of the above-cited Statute. The Commissioner of Public Welfare is bound to inform the various county agencies of this.

"It is therefore concluded that the Mower CWD erroneously denied payment of the petitioner's medical expenses, under the Medical Assistance Program."

An appeal to the district court was taken by the Mower County Welfare Board. The court reversed the commissioner on the ground that Bulletin # 12 mandating reimbursement for abortions performed on welfare patients did not have the status of a regulation required by the Administrative Procedure Act. The district court held:

"It is the finding of this Court that Policy Bulletin # 12 is a rule implemented to make specific the law enforced by the Department of Public Welfare. It is also the finding of this Court that Policy Bulletin # 12 was not properly adopted as a rule pursuant to M.S.A. Section 15.-01, and, therefore, Policy Bulletin # 12 is of no force and effect as to the Mower County Welfare Board."

In her appeal to this Court the commissioner argues for the first time that failure of Mower County to pay Mrs. Leeper's medical expenses was a violation of the Fourteenth Amendment of the United States Constitution. That question was not presented to or decided by the district court and has now been laid to rest by *Beal v. Doe*, 432 U.S. 438, 97 S.Ct. 2366, 53 L.Ed.2d 464 (1977); *Maher v. Roe*, 432 U.S. 464, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977); and *Poelker v. Doe*, 432 U.S. 519, 97 S.Ct. 2391, 53 L.Ed.2d 528 (1977). Those cases held that the states were permitted but not required under the Federal Constitution to provide payment for nontherapeutic elective abortions performed on welfare patients.[2]

As we have already indicated, we held in *McKee v. Likins, supra,* that Policy Bulletin No. 12 is not exempt from the rulemaking provisions of the Administrative Procedure Act, Minn.St. 15.0412, subd. 4. Accordingly, that bulletin which directs reimbursement for elective nontherapeutic abortions performed on welfare patients may not be relied on as authority for requiring county welfare boards to pay for such medical procedures.

Affirmed.

**2.** The question of whether a county welfare department can refuse to reimburse a welfare patient for an elective nontherapeutic abortion without violating the Constitution of the State of Minnesota was not raised either at the trial court or in this court. Nor was an issue raised as to whether Mrs. Leeper's abortion was "medically necessary" within the definition of that term in *Doe v. Bolton,* 410 U.S. 179, 192, 93 S.Ct. 739, 747, 35 L.Ed.2d 201, 212 (1973) to which the court made reference in *Beal v. Doe.* What is "medically necessary" surgery has subsequently been discussed by our Court in *Doe v. Department of Public Welfare,* Minn., 257 N.W.2d 816, filed August 19, 1977.